IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JAMES RYAN DANIEL, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:03-CV-190(CDL) |
| SPECTRUM STORES, INC. and NANCY ALDRICH, | * |
| | * |
| Defendants | * |

O R D E R

Defendant Spectrum Stores, Inc. has filed a Motion for Summary Judgment. For the following reasons, Spectrum's motion is granted as to Plaintiff's federal law claims. The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims, and those claims are dismissed without prejudice.[1]

FACTUAL BACKGROUND

Defendant Spectrum operates a number of convenience stores in Georgia and Alabama. In October 2002, Plaintiff was hired as a cashier at Spectrum Store #44 in Columbus, Georgia. In November 2002, he was transferred to Spectrum Store #127 in Columbus, Georgia, where he worked as a full-time cashier until his employment separation on May 26, 2003. Defendant Nancy Aldrich was Unit Supervisor of Store #127 from mid-January 2003 through May 26, 2003. During this time-frame, Aldrich was Plaintiff's direct supervisor. She was the only salaried employee at Store #127, and her responsibilities included hiring, firing, and disciplining employees and creating work schedules

---

[1] The only claims against Defendant Nancy Aldrich are state claims.

for the store's employees.  Aldrich reported directly to Tony Powers, the Division Manager over Store #127.  Powers visited Store #127 on a regular basis and spoke with Plaintiff during a number of his visits to the store.

According to Plaintiff, after Aldrich began working at Store #127, she began touching Plaintiff inappropriately, grabbing him on the buttocks and rubbing herself against him.[2]  She also made lewd comments to him, which Plaintiff interpreted as demands for sexual favors.  This behavior continued until Plaintiff's employment with Spectrum ended.  Plaintiff does admit that Aldrich never asked to have sex with him, that she never asked him for sexual favors, that she never told him he would suffer negative consequences if he did not provide sexual favors and that she never told him that she would fire him if he would not submit to a sexual advance.  Nonetheless, Plaintiff contends that Aldrich's "touches and innuendos clearly indicated her intent" to demand sexual favors.

Spectrum maintains an Employee Handbook applicable to all its employees, including Store #127.  The Employee Handbook contains a "No Harassment Policy," which states in pertinent part:

> We do not and will not tolerate harassment of our employees, applicants or customers.  The term "harassment" includes but is not limited to:  slurs, jokes and other verbal, graphic or physical conduct relating to an individual's . . . sex . . . .  "Harassment" also includes sexual advances, requests for sexual favors, unwelcome touching and other verbal, graphic or physical conduct of a sexual nature.
> VIOLATION OF THIS POLICY WILL SUBJECT THE EMPLOYEE TO DISCIPLINARY ACTION, UP TO AND INCLUDING IMMEDIATE TERMINATION.

---

[2] Aldrich denies all of Plaintiff's allegations of sexual harassment.

>If you feel that you are being harassed in any way by a co-worker, a customer or a vendor, you should notify your immediate supervisor. . . .
>
>Our supervisors and managers are also covered by this policy and are prohibited from engaging in any form of harassing conduct.  Further, no supervisor or other member of management, has the authority to suggest to any employee or applicant that the individual's employment, continued employment or future advancement will be affected in any way the individual's entering into (or refusing to enter) any form of personal relationship with the supervisor or any member of management.  Such conduct is a direct violation of this policy.
>
>If you believe that a supervisor or a member of management has acted inconsistently with this policy and you are not comfortable bringing a complaint regarding harassment to your immediate supervisor or if you believe that your complaint concerning a co-worker, a customer, or a vendor has not been handled to your satisfaction, please immediately contact either the Vice President of Human Resources or the Executive Vice President.
>
>YOU WILL NOT BE PENALIZED IN ANY WAY FOR REPORTING SUCH IMPROPER CONDUCT.
>
>Please do not assume Spectrum is aware of your problem. Please bring your complaints and concerns to our attention so that we can resolve them.

Plaintiff received a copy of the Spectrum Employee Handbook during the hiring and orientation process.  He read the handbook and was aware of the No Harassment Policy, including the portion of the policy regarding reporting harassment.   In addition, Plaintiff received a handout regarding Spectrum's "ALERTLINE" during orientation.  The ALERTLINE handout states, in pertinent part:

>The ALERTLINE reporting program is designed to prevent and deter policy violations, criminal conduct, and undesirable employees behavior that may hurt you, your co-workers, our Company, and our customers.  The ALERTLINE is not a substitute for our regular responsibilities of observing and reporting.
>
>ALERTLINE
>1-800-93-ALERT
>QUESTIONS WELCOME – TOLL FREE – 24 HOURS A DAY
>CALL ANONYMOUSLY YOUR NAME IS NOT REQUIRED
>WHEN YOU SEE BUSINESS RISKS, REPORT THEM
>TO YOUR SUPERVISORS OR CALL ALERTLINE

Plaintiff never told Aldrich to stop the alleged harassment, but he did try to move away from her whenever she was nearby, he avoided being near her, and he avoided talking to her as much as possible. Plaintiff never complained about the alleged harassment to Powers, Aldrich's direct supervisor, or to another person with supervisory authority over Aldrich.  He never complained about the alleged harassment to Spectrum's Vice President of Human Resources or Executive Vice President.  He never called the ALERTLINE number to complain about the alleged harassment.  Plaintiff claims that although he did not follow Spectrum's harassment reporting procedures, he did report the alleged harassment to Carla Henegar, Assistant Unit Supervisor at Store #127.  Henegar was an hourly employee who reported directly to Aldrich and had job duties similar to those of the store's cashiers.[3]  Plaintiff never reported the alleged harassment to Aldrich's supervisors because he "really didn't think it would do any good."  Spectrum management first became aware that Plaintiff was alleging sexual harassment against Aldrich when it received a summons and complaint from Plaintiff after his employment separation.

Plaintiff contends that he was effectively terminated because he refused to acquiesce to Aldrich's advances.  Spectrum responds that Plaintiff was terminated after failing to report to work.  In order to understand the context within which Plaintiff left Spectrum's employment, it is necessary to examine the events leading up to Plaintiff's termination.

---

[3] Henegar denies receiving such a report from Plaintiff.

4

Aldrich created and posted weekly work schedules for the store's employees. She sometimes changed the work schedule after it was initially posted, and some employees complained about the changes. Occasionally, Aldrich scheduled an employee to work during a time when that employee had a pre-existing conflict, such as a class, but she would sometimes revise the schedule to accommodate the employee's pre-existing schedule if she was asked to do so. She would not, however, always revise the schedule to accommodate employees who complained about schedule changes made after the schedule was initially posted.

After Plaintiff began working full-time at Spectrum, he began working part-time at a Waffle House restaurant. He arranged his Waffle House schedule around his Spectrum schedule, and he typically worked at Waffle House on the days he did not work at Spectrum. Aldrich usually scheduled Plaintiff to work at the Spectrum on Monday mornings. Plaintiff was originally not scheduled to work at all at Spectrum on Monday, May 26, 2003, but Aldrich revised the schedule a day or two after it was initially posted, scheduling Plaintiff to work at Spectrum on the afternoon of Monday, May 26. By the time the revised Spectrum schedule was posted (several days before May 26), Plaintiff had been scheduled to work the afternoon shift at Waffle House on May 26. Plaintiff told Aldrich about the conflict and asked her to change the schedule. Aldrich refused, replying that she was not worried about Waffle House and that her schedule was the only one she was concerned about. Two or three days before May 26, Plaintiff called Powers to complain about the scheduling conflict. He did not discuss any other problems he had with Aldrich, such as the alleged

5

harassment. Powers told Plaintiff to speak with Aldrich about the conflict. Plaintiff did not discuss the conflict with Aldrich again until shortly before his shift was scheduled to begin on May 26, when he told her that he was not coming to work at Spectrum that day. Plaintiff claims that Aldrich told him that if he did not come in to work at Spectrum that day, he would not need to come back to work at all. He was, however, "sure" that Aldrich wanted him to come to work at Spectrum on May 26, and he believes that if he had shown up at Spectrum on May 26, he would have been permitted to work. Rather than going to work at Spectrum on May 26, Plaintiff went to work at Waffle House because he "wasn't going to leave Waffle House with one less person." Plaintiff's employment with Spectrum ended after he failed to report to Spectrum on May 26. On one employment application he completed after his Spectrum employment ended, Plaintiff wrote that he "quit [Spectrum] due to schedule change."

Plaintiff brings claims against Spectrum for sexual harassment, sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). He also seeks to recover against Spectrum and Aldrich under various Georgia state law tort theories, including negligent retention of Aldrich, tortious assault and battery, and intentional infliction of emotional distress.

### DISCUSSION
*1. Sexual Harassment Claim*

Plaintiff seeks to hold Spectrum liable for Aldrich's alleged harassment. An employer is liable under Title VII if it permits a

supervisor to take a "tangible employment action" against an employee because he refused the supervisor's sexual advances. *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004).  An employer is also liable under Title VII if an employee is subjected to an actionable hostile work environment created by his supervisor *and* the employer cannot prove the two elements of the affirmative defense established by the Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  The *Ellerth/Faragher* affirmative defense is not available when the supervisor's harassment culminates in a tangible employment action.  *Ellerth*, 524 U.S. at 765.

Plaintiff argues that the *Ellerth/Faragher* affirmative defense is not available in this case because he was subjected to a tangible employment action after he refused Aldrich's sexual advances.  A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.  Plaintiff argues that he was *terminated* because he refused Aldrich's sexual advances.  However, the evidence viewed in the light most favorable to Plaintiff shows that Aldrich scheduled Plaintiff to work on May 26 and that Plaintiff's employment ended when he did not show up for work.  There is no evidence that any other employee failed to work a scheduled shift and remained employed by Spectrum.  Therefore, Plaintiff bases

his case upon alleged differences in treatment in *scheduling*.[4] Standing alone, a single, isolated schedule change certainly would not constitute a tangible employment action. Plaintiff argues that the schedule change should be considered a tangible employment action because it *resulted* in his termination from Spectrum: in changing Plaintiff's schedule, Aldrich in effect fired him.

Plaintiff's argument is flawed. First, there is no evidence that Aldrich knew that Plaintiff was scheduled to work at the Waffle House on Monday afternoon when she revised the Spectrum schedule. Second, there is no evidence that, after Aldrich told Plaintiff that she was only concerned about the Spectrum schedule and not the Waffle House schedule, Aldrich knew or should have known that Plaintiff would be unable to change the Waffle House schedule and was thus faced with the unhappy task of deciding between his Spectrum job and his Waffle House job. Third, there is no evidence that Aldrich knew or should have known that Plaintiff would choose to work at his Waffle House job rather than his Spectrum job. While it is true that at this stage the evidence must be viewed in the light most favorable to Plaintiff and all justifiable inferences are to be drawn in his favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court cannot justifiably infer from the evidence in this case that Aldrich effectively terminated Plaintiff by changing the schedule. The

---

[4] Plaintiff offered evidence that Beth Zamarripa, a female cashier who was not subjected to sexual advances from Aldrich, successfully persuaded Aldrich to change the Spectrum schedule on one or two occasions so that it would not conflict with her school schedule. Plaintiff contends that this evidence raises an inference that he was *terminated* because he had rejected sexual advances from Aldrich.

evidence in this case supports nothing more than a finding that the adverse action suffered by Plaintiff was a single, isolated schedule change. This is not enough to meet the "tangible employment action" requirement.

Because there was no tangible employment action in this case, Plaintiff must prove that he was subjected to an actionable hostile work environment. If Plaintiff proves an actionable hostile work environment, Spectrum may avoid liability by showing (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Spectrum or to avoid harm otherwise. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

For the purposes of this summary judgment motion, Spectrum concedes and the Court assumes that Plaintiff has established an actionable hostile work environment created by Aldrich. Therefore, the burden shifts to Spectrum to prove both prongs of the *Ellerth/Faragher* affirmative defense.[5]

An employer may generally satisfy prong one of the *Ellerth/Faragher* defense by showing that it has promulgated an anti-harassment policy that contains a sufficient complaint procedure. *Walton v. Johnson & Johnson Services, Inc.* 347 F.3d 1272, 1286 (11th Cir. 2003).

---

[5] Plaintiff appears to concede that Spectrum has met both prongs of the *Ellerth/Faragher* defense. Nonetheless, because Plaintiff's argument hinges on the contention that there was a tangible employment action in this case and the Court has determined that there was no tangible employment action, the Court finds it appropriate to briefly address Spectrum's *Ellerth/Faragher* defense.

9

Spectrum's No Harassment Policy provides in pertinent part:

> If you believe that a supervisor or a member of management has acted inconsistently with this policy and you are not comfortable bringing a complaint regarding harassment to your immediate supervisor . . . please immediately contact either the Vice President of Human Resources or the Executive Vice President.

In addition to the complaint procedure outlined in Spectrum's No Harassment Policy, Spectrum maintained an ALERTLINE, which enabled employees to report policy violations anonymously. Plaintiff does not contend that Spectrum's policy was not promulgated effectively or that it contains an inadequate complaint procedure, and there is no evidence to that effect. Spectrum's policy provides that complaints about workplace harassment may be made to the employee's immediate supervisor, to the Vice President of Human Resources, or to the Executive Vice President. This comports with *Faragher*'s minimum requirement of an effectively promulgated "complaint procedure 'designed to encourage victims of harassment to come forward [without requiring] a victim to complain first to the offending supervisor.'" *Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1286 (11th Cir. 2003) (quoting *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000)). Furthermore, there is no question that Plaintiff received a copy of the No Harassment Policy. Therefore, the Court finds that Spectrum has met prong one of the *Ellerth/Faragher* defense.

To satisfy prong two of the *Ellerth/Faragher* affirmative defense, Spectrum must show that Plaintiff unreasonably failed to use Spectrum's complaint procedure. *See Walton*, 347 F.3d at 1289. Plaintiff admits that he did not ask Aldrich to stop the harassment

10

and that he did not comply with Spectrum's No Harassment Policy and reporting procedures at all. He admits that he knew about Spectrum's complaint procedures. Plaintiff does not claim that he had a legitimate fear of retaliation or other concern that might justify his failure to report the harassment—rather, he simply claims that he did not think that reporting the harassment would do any good. However, Plaintiff had an obligation to take reasonable care to avoid harm—and despite knowing the proper channels for reporting harassment, Plaintiff chose not to use them.

Plaintiff does claim to have reported the alleged harassment to his Assistant Unit Supervisor, Carla Henegar—an hourly employee who also reported to Aldrich. Plaintiff does not seriously contend, nor does the Court find, that this report was sufficient to provide Spectrum with notice of the alleged harassment. The employer's notice of harassment is of "paramount importance" because an employer is liable if it had notice of harassment and failed to take prompt corrective action. *Madray*, 208 F.3d at 1299. In its No Harassment Policy, Spectrum established that when complaints are made to the employee's immediate supervisor, to the Vice President of Human Resources, or to the Executive Vice President, it has been given notice sufficient to be obligated to make a prompt corrective response. Henegar was not Plaintiff's immediate supervisor, and Assistant Unit Supervisors are not listed in Spectrum's policy as designated recipients for sexual harassment claims. The Eleventh Circuit has noted that "once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated

11

procedures to its employees, then 'it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances.'" *Madray,* 208 F.3d at 1300 (quoting *Farley v. American Cast Iron Pipe,* 115 F.3d 1548, 1554 (11th Cir. 1997)). Therefore, the Court finds that Spectrum cannot be considered to have been placed on notice of the alleged harassment by Plaintiff's complaint to Henegar, an individual not designated by Spectrum to receive or process harassment claims. For these reasons, the Court finds that Plaintiff has unreasonably failed to use Spectrum's complaint procedure and that Spectrum has therefore met prong two of the *Ellerth/Faragher* defense. Spectrum is therefore entitled to summary judgment on Plaintiff's sexual harassment claim.

*2. Sex Discrimination Claim*

In addition to his sexual harassment claim, Plaintiff claims that he was terminated from Spectrum because of his sex. Plaintiff has no direct evidence to support this claim, so his claim will be analyzed under the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff must establish a prima facie case of discrimination to create a rebuttable presumption that Spectrum unlawfully discriminated against him. *See McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of disparate treatment, Plaintiff must show that he was a member of a protected class, qualified for the position in question, and was subjected to an adverse employment action while similarly situated employees outside his class were treated more favorably. *See, e.g., Wilson v. B/E*

*Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). In this case, it is undisputed that Plaintiff was a member of a protected class and that he was qualified to be a cashier. For the purposes of this summary judgment motion, Spectrum concedes that Plaintiff was terminated (and did not abandon his job) when he failed to report for work on May 26.[6] However, Plaintiff has not presented evidence that Spectrum treated similarly situated employees outside of Plaintiff's class more favorably. Specifically, there is no evidence that any other employee—much less any female employee—failed to work a scheduled shift and was not terminated.

Plaintiff contends that Beth Zamarripa, a female cashier, is a similarly situated employee whom Spectrum treated more favorably. Zamarripa successfully convinced Aldrich to change the Spectrum schedule once or twice so that it would not conflict with her school schedule. Plaintiff argues he and Zamarripa were similarly situated because they both objected to a scheduled shift and were treated differently: Plaintiff was terminated but Zamarripa was not. To meet the "similarly situated" requirement of the prima facie case, Plaintiff must show that he and employees outside the protected class engaged in "nearly identical" conduct but were disciplined in different ways. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984); *accord Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998), *opinion modified on other*

---

[6] Spectrum does *not* concede, nor does the Court find, that Plaintiff was effectively terminated when Aldrich revised the Spectrum schedule.

13

*grounds by* 151 F.3d 1321 (11th Cir. 1998). This, Plaintiff cannot do. It is important that Plaintiff was terminated for *missing* a scheduled shift, not just objecting to a scheduled shift. Plaintiff admits that he was scheduled to work at Spectrum on May 26. He believed—even after Aldrich told him that he would not need to come back to work at Spectrum if he did not report to work that day—that if he had shown up to Spectrum on May 26 he would have been permitted to work. He admits that he did not come in to work at Spectrum on or after May 26, but he has not shown that Zamarripa or any other employee engaged in "nearly identical" conduct (missing a scheduled shift) but was retained.[7]

Because Plaintiff failed to identify similarly situated employees outside the protected class who were treated more favorably, his case fails because the burden is on him to show that he has a prima facie case. *See Nix*, 738 F.2d at 1186. Accordingly, Spectrum is entitled to summary judgment on Plaintiff's sex discrimination claim.

*3. Retaliation Claim*

For the sake of completeness, the Court finds it necessary to directly address any retaliation claim that could be inferred from Plaintiff's Complaint. It appears clear that Plaintiff's only claim for retaliation is based upon his contention that Aldrich "retaliated"

---

[7] At most, Plaintiff's evidence shows that Aldrich rescheduled Zamarripa but refused to reschedule Plaintiff. As discussed *supra*, the schedule change does not constitute a tangible employment action to support Plaintiff's sexual harassment claims. Similarly, the schedule change does not constitute an adverse employment action to support a prima facie case of disparate treatment because it is not a serious and material change in the terms, conditions, or privileges of his employment. *See Davis v. Town of Lake Park*, 245 F.2d 1232, 1238 (11th Cir. 2001).

14

against him for refusing her sexual advances. The Court has already found that Spectrum is entitled to summary judgment on Plaintiff's "sexual harassment retaliation" claim. Moreover, no evidence exists that Plaintiff was retaliated against for complaining about any harassment or discrimination or otherwise engaging in protected activity. *See Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999). Therefore, to the extent that Plaintiff's Complaint could be interpreted to include a Title VII retaliation claim, the Court finds that Spectrum is entitled to summary judgment on that claim.

## CONCLUSION

Spectrum's Motion for Summary Judgment is granted as to all of Plaintiff's Title VII claims. Plaintiff's remaining claims, including all of his claims against Defendant Aldrich, arise under Georgia law. The Court declines to exercise jurisdiction over those claims, and those claims are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED, this 21st day of July, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE